**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CIANI LASHAY FREEMAN,** Plaintiff, v. **AMAZON.COM SERVICES, LLC,** *et al.*, Defendants. | Civil Action No. 24-8181 (ZNQ) (JTQ) **OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon two Motions to Dismiss. Defendant Amazon.com Services, LLC ("Amazon"), filed the first Motion to Dismiss. (ECF No. 40.) Amazon filed a brief in support of its Motion. ("Amazon Moving Br.," ECF No. 40-1.) Plaintiff Ciani Lashay Freeman ("Plaintiff") opposed. (ECF No. 44.) Amazon filed a reply. (ECF No. 48.)

    Defendant Metro One Loss Prevention Services Group (New Jersey), Inc. ("Metro One") filed the second Motion to Dismiss. (ECF No. 41.) Metro One filed a brief in support of its Motion. ("Metro One Moving Br.," ECF No. 41-1.) Plaintiff opposed. (ECF No. 45.) Metro One filed a reply. (ECF No. 46.)

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** the Motions to Dismiss.

I.    <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>[1]

    A.    **FACTUAL BACKGROUND**

This is a suit for gender-identity harassment and discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.* Plaintiff is a transgender woman. (Second Amended Complaint ("SAC"), ECF No. 32 ¶ 13.) From December 2022 to June 16, 2023, she worked as an unarmed security officer for Defendants Amazon and Metro One, as joint employers, and was physically assigned to work at an Amazon's PNE-5 facility. (*Id.* ¶¶ 14–20.) At the start of Plaintiff's employment in the PNE-5 facility, she told Annie Carmichael ("Carmichael") that she is a transgender woman. (*Id.* ¶¶ 24.) At that time, Carmichael was employed by Metro and Amazon as an account or site manager at the PNE-5 facility and was one of Plaintiff's supervisors. (*Id.* ¶ 25.) Shortly after sharing her gender identity with Carmicheal, which Plaintiff intended to keep between herself and Carmichael, Plaintiff learned that Carmichael conveyed that information to other employees at the PNE-5 facility. (*Id.* ¶¶ 26–28.) Following the publicization of Plaintiff's gender identity, Plaintiff's co-workers at the PNE-5 facility—either employed by Metro One or Amazon, or both—became standoffish or aggressive toward her. (*Id.* ¶ 28.)

On March 12, 2023, Plaintiff complained to Albert Rivera ("Rivera"), a Metro One Regional manager, about the issues she experienced in the workplace and also disclosed her gender identity to Rivera. (*Id.* ¶ 29–30.) Rivera responded to Plaintiff's complaint by email, copied another Metro One manager on that email, and forwarded Plaintiff's complaint to Metro One Human Resources. (*Id.* ¶ 31.) Metro One Human Resources spoke with Plaintiff inquiring only whether Plaintiff needed an escort to and from her car, which Plaintiff declined as unnecessary.

---

[1] The Court accepts the factual allegations in Plaintiff's Second Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

(*Id*. ¶¶ 32–34.)  Plaintiff expressed that she wanted Carmichael out of the PNE-5 facility.  (*Id*. ¶ 34.)  Plaintiff never again received communication from Metro One Human Resources regarding the incident and Carmichael continued to work with Plaintiff at the PNE-5 facility.  (*Id*. ¶¶35–37.)

In May 2023, Plaintiff applied for a promotion to become a supervisor at the PNE-5 facility. (*Id*. ¶ 38.)  Metro One and Amazon instead promoted a male employee to that position, despite Plaintiff's seniority.  (*Id*. ¶¶ 39–40.)  On June 9, 2023, Plaintiff resigned from her employment with Defendants due to Defendants' decision to not promote her and her discomfort in the workplace.  (*Id*. ¶ 41.)

In July 2023, Metro One offered Plaintiff an unarmed security position at Amazon's EWR-4 facility and Plaintiff accepted.  (*Id*. ¶¶ 43–45.)  Plaintiff worked at the EWR-4 facility from August 6, 2023, until November 30, 2023.  (*Id*. ¶ 45.)  On two separate occasions during her first few months at the EWR-4 facility, the posted work schedule referred to Plaintiff as "Ciani *Charles* Freeman."  (*Id*. ¶ 47.)  Plaintiff contacted Geo, a Metro One manager, to report that Plaintiff's name is Ciani, and Plaintiff should otherwise not be addressed as "Charles."  (*Id*. ¶ 49.)

In October 2023, another security officer verbally attacked Plaintiff and called her a series of slurs.  (*Id*. ¶ 50–56.)  Plaintiff immediately reported the altercation to her shift supervisor.  (*Id*. ¶ 57–58.)  That security officer repeated the same slurs in front of Plaintiff and her shift supervisor. (*Id*. ¶¶ 61–62.)  Plaintiff filed a report and contacted Rivera, who indicated that Metro One Human Resources would investigate, but Metro One Human Resources never contacted her.  (*Id*. ¶¶ 67–68.)

On November 1, 2023, Plaintiff overheard another co-worker refer to her as "not Ciani, but Charles," a "man," and "not a woman."  (*Id*. ¶¶ 69–70.)  This time, a different co-worker reported the incident to Geo.  (*Id*. ¶¶ 73–74, 83.)  No disciplinary action was taken.  (*Id*. ¶¶ 75–76.)  On

3

November 21, 2023, a male Amazon employee took a photo of Plaintiff and another co-worker, and Plaintiff reported that incident to someone in Amazon's loss prevention department. (*Id.* ¶¶ 77–79.) On November 23, 2023, a female Amazon employee pulled Plaintiff's hair and assaulted her. (*Id.* ¶ 80.) Plaintiff reported this event to Amazon Human Resources. (*Id.* ¶ 82.)

On November 30, 2023, Plaintiff met with Geo, the EWR-4 facility overnight shift supervisor, and two managers from Amazon Loss Prevention Department about Plaintiff's recent reports. (*Id.* ¶ 83–84.) In the end, Geo informed Plaintiff that Metro One needed to conduct a further investigation and Plaintiff could not work until the investigation concluded. (*Id.* ¶ 88.) One week later, Geo informed Plaintiff that she violated Amazon policy and would not be asked to return to the EWR-4 facility or to any other job site. (*Id.* ¶¶ 90–92.) Prior to her termination, Plaintiff never received any verbal or written warning or disciplinary actions from either Metro One or Amazon. (*Id.* ¶ 93.)

B.     PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on June 26, 2024, in the Superior Court of New Jersey, Law Division, Mercer County. (Notice of Removal ("NOR") Ex. A, ECF No. 1 at 7–22.) Plaintiff amended her Complaint on June 28, 2024, to correctly name Amazon.com Services, LLC, from Amazon.com Services, Inc., and to remove Amazon Fulfillment Services, Inc., as a defendant. (*Compare id.* at 8 *with id.* at 23.). Amazon timely removed this action on July 31, 2024, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (NOR ¶ 6.) Metro One filed an Answer on September 4, 2024. (ECF No. 15.) Amazon filed a Motion to Dismiss on September 13, 2024. (ECF No. 17). On April 30, 2025, the Court granted Amazon's Motion and dismissed the entire First Amended Complaint without prejudice because the pleadings constituted an impermissible group pleading violative of Rule 8 of the Federal Rules of Civil Procedure. (*See*

*generally* ECF No. 30.)  The Court afforded Plaintiff thirty days to file a Second Amended Complaint to cure the deficient pleadings.  (*Id.* at 8.)

Plaintiff filed her Second Amended Complaint on May 30, 2025.  (*See* SAC.)  In her Second Amended Complaint, Plaintiff alleges that Defendants each engaged in gender-identity-based harassment in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12, *et seq.*, (SAC ¶¶ 120–22); (2) gender-identity discrimination, in violation of NJLAD (*id.* ¶¶ 123–25); and (3) unlawful retaliation, in violation of NJLAD (*id.* ¶¶ 126–27).  Finally, among other equitable relief, Plaintiff seeks a declaration that Defendants' practices violate New Jersey law and that she be reinstated with back and front pay.  (*Id.* ¶¶ 107–108.)

## II.   SUBJECT MATTER JURISDICTION

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires plaintiffs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

When considering a motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

The district court's role in reviewing the sufficiency of the complaint is simple: it does not determine "whether the plaintiffs will ultimately prevail," but rather "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. DISCUSSION

### A. WHETHER THE COMPLAINT CONSTITUTES A GROUP PLEADING

In its Motion, Amazon argues that the Court should dismiss the Second Amended Complaint because the Second Amended Complaint does not cure the defects that constituted improper group pleading. (Amazon Moving Br., at 8–9.) Specifically, Amazon avers that Plaintiff merely replaced the word "Defendants" with "Metro One and Amazon," and the Second Amended Complaint still fails to differentiate the conduct for which Plaintiff claims Metro One or Amazon are liable. (*Id.*) Metro One similarly maintains that the Second Amended Complaint should be dismissed with prejudice as an improper group pleading because it fails to distinguish which

Defendant is liable for each cause of action.  (Metro One Moving Br., at 5–9.)  Plaintiff contends that her Second Amended Complaint clarifies which Defendant acted or otherwise failed to act, plausibly subjecting them to liability under the NJLAD.  (*See* ECF Nos. 44 at 13–18 & 45 at 13–20.)  The Court agrees with Plaintiff.

As noted above, Rule 8(a)(2) requires a short and plain statement setting forth claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; Fed. R. Civ. Pr. 8(a)(2), (3).  Group pleading is not permitted.  It occurs when a complaint "fails to specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Richardson v. EzriCare, LLC*, Civ. No. 23-3498, 2024 WL 4349687, at *4 (D.N.J. Sept. 30, 2024) (quoting *Foulke v. Twp. of Cherry Hill*, Civ. No. 23-02543, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024)).  The result is a pleading in which "it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'"  *Id.* (quoting *Innovative Cosm. Concepts, LLC v. Brown Packaging, Inc.*, Civ. No. 18-5939, 2020 WL 7048577, at *2 (D.N.J. Apr. 28, 2020)).

Courts of this Circuit often rely on the Eleventh Circuit's robust doctrine prohibiting shotgun or group pleading.  *See Foulke*, 2024 WL 3568841, at *7.  The Eleventh Circuit identified four common categories of impermissible group pleading: (1) "the most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts;" (2) "the next most common" is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that does not separate "into a different count each cause of action or claim for relief;" or (4) "the relatively rare" type of complaint that "assert[s] multiple claims against multiple defendants

7

without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Here, Defendants' concerns with the Second Amended Complaint fall within the fourth category.

      The Court finds that the Second Amended Complaint is not an impermissible group pleading. In reviewing the Second Amended Complaint as a whole, as the Court must, the Court acknowledges that the Second Amended Complaint asserts multiple counts where each count adopts the allegations of the preceding count and asserts multiple claims against multiple defendants. This notwithstanding, the Court can discern the actions for which Amazon or Metro One, individually or collectively, are alleged to be liable. That the Second Amended Complaint contains overlapping allegations against each Defendant for engaging in the same or similar conduct does not render it a group pleading. *See Kyle K. v. Chapman*, 208 F.3d 940, 943–44 (11th Cir. 2000) (explaining that "[t]he fact that defendants are accused collectively does not render the complaint deficient."); *see also Spector v. Suzuki Motor of Am., Inc.*, Civ. No. 17-0650, 2018 WL 691657, at *3 (M.D. Fla. Feb. 2, 2018) ("While generally a complaint that makes no distinction between defendants' liability is considered a shotgun pleading, a 'complaint that can be fairly read to aver that all defendants are responsible for the alleged conduct' may refer to defendants collectively." (quoting *Chapman*, 208 F.3d at 944)).

      Here, the Second Amended Complaint can be reasonably read to specify Amazon's individual involvement. For example, the Second Amended Complaint alleges that Plaintiff experienced incidents of harassment at two facilities owned and operated by Amazon, Plaintiff told Amazon personnel about those incidents, and Plaintiff was told that Amazon did not want her to return to work because Plaintiff violated Amazon's policies. (SAC ¶¶ 20, 46, 77, 79, 80, 82–

84.) Likewise, the Second Amended Complaint summarizes Metro One's individual role. The Second Amended Complaint alleges Plaintiff reported harassing incidents to Metro One personnel, Metro One personnel failed to cure Plaintiff's reports, and Metro One personnel told Plaintiff she could not return to work because she violated Amazon's policies. (*Id.* ¶¶ 29–35, 49, 65–68, 76, 90.) As it pertains to both Defendants, Plaintiff alleges that she was harassed by employees or supervisors, who like her, were jointly employed by Metro One and Amazon, Plaintiff reported her concerns to both Metro One and Amazon personnel, neither Metro One nor Amazon disciplined those employees or remedied Plaintiff's concerns, and Plaintiff endured adverse employment actions by both Metro One and Amazon. (*Id.* ¶¶ 24–28, 36–41, 47, 50, 57–59, 63–63, 69–73, 76, 83–91.) The Court is therefore satisfied that the Second Amended Complaint distinguishes which party "had distinct roles in the alleged misconduct" and "which defendants engaged in what wrongful conduct." *Falat v. Cnty. of Hunterdon*, Civ. No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

Plaintiff also includes allegations tethering Amazon and Metro One's actions, collectively or individually, to the elements of gender-based harassment, discrimination, and retaliation for which Plaintiff contends each defendant is liable. (SAC ¶¶ 94–119.) Accordingly, Plaintiff's Second Amended Complaint adequately places Amazon and Metro One on notice of the claims against each of them, individually or collectively. The Court will thus deny Defendants' Motions to Dismiss on this basis, and address Amazon's remaining arguments.

> **B.     WHETHER PLAINTIFF SUFFICIENTLY ALLEGES SHE WAS JOINTLY EMPLOYED BY AMAZON AND METRO ONE**

Amazon avers that Plaintiff fails to adequately plead an employer-employee relationship with Amazon or a joint-employer relationship with Amazon and Metro One, and consequently, Plaintiff cannot bring actionable NJLAD claims against Amazon. (Amazon Moving Br., at 9–14.)

Plaintiff counters that she plausibly alleges a joint-employer relationship with Amazon and Metro One, but that establishing such relationship is fact specific and is better suited for resolution at the summary judgment stage. ("Opp'n Br.," ECF No. 44 at 18–25.) The Court agrees with Plaintiff.

The NJLAD "generally require[s] an employment relationship to exist between a plaintiff and a defendant to hold said defendant liable for acts of discrimination." *Galarza v. Whittle-Kinard*, Civ. No. 16-0764, 2017 WL 4329733, at *10 (D.N.J. Sept. 29, 2017) (alteration in original) (quoting *Plaso v. IJKG, LLC*, Civ. No. 11-5010, 2013 WL 2182233, at *3 (D.N.J. May 14, 2013), *aff'd* 553 F. App'x 199 (3d Cir. 2014)). To prove that an employee-employer relationship exists under the joint-employer theory, New Jersey courts employ a twelve-factor test:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

*D'Annunzio v. Prudential Ins. Co. of America*, 927 A.2d 113, 121 (N.J. 2007) (quoting *Pukowsky v. Caruso*, 711 A.2d 398, 404 (N.J. Super. Ct. App. Div. 1998)).

The joint-employer test is "'inherently factual,' with the employer's level of control over the worker's performance generally considered 'to be the most important factor.'" *DeStefano v. New Jersey Small Bus. Dev. Ctr. at Rutgers Univ.*, Civ. No. 22-1964, 2023 WL 9017148, at *9 (D.N.J. Dec. 29, 2023) (quoting *Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 832 (D.N.J. 2020)); *Kalski v. Brandywine Senior Living, LLC*, Civ. No. 22-4484, 2022 WL 17823862, at *5 (D.N.J. 2022); *accord Plaso*, 553 F. App'x at 204 ("[A] joint employment relationship exists when 'two entities exercise significant control over the same employees."). In that regard, the Third

Circuit cautioned that "the precise contours of an employment relationship can only be established by careful factual inquiry . . . and the issue thus 'may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage." *Washington v. Client Network Servs. Inc.*, 590 F. App'x 126, 130 (3d Cir. 2014) (first quoting *Graves v. Lowery*, 117 F.3d 723, 727–29 (3d Cir.1997); and then quoting *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 768 n.5 (3d Cir. 2013)).[2]

Here, Plaintiff alleges that she was employed jointly by Metro One and Amazon as an unarmed security guard and that Metro One and Amazon had a contractual relationship for security services. (SAC ¶ 8, 14, 43–45.) During her employment, Plaintiff was assigned to work at two facilities owned and operated by Amazon. (*Id.* ¶¶ 20, 46.) Plaintiff's work schedule was posted at one of those Amazon facilities. (*Id.* ¶ 47.) Plaintiff also alleges that managers employed by either Amazon or Metro One terminated Plaintiff's employment because Plaintiff allegedly violated Amazon policies. (*Id.* ¶¶ 87–92.) The Court disagrees with Amazon insofar as it contends that Plaintiff pleads only conclusory allegations of an employer-employee or a joint-employee relationship. In the Court's view, Plaintiff's Second Amended Complaint puts forth the indicia of control required to plead a joint-employer relationship. Discovery will reveal the contours of the employment relationship. *Washington*, 590 F. App'x at 130. The Court next turns to whether Plaintiff sufficiently pled gender-identity harassment and retaliation under the NJLAD.

---

[2] The Third Circuit has explained that the inquiry for establishing an employment relationship under Title VII is substantially similar to that of the NJLAD. *See Plaso*, 553 F. App'x at 205 n.4; *accord Pukowsky*, 711 A.2d at 402 (explaining that New Jersey courts look to Title VII precedent "as a key source of interpretative authority." (quoting *Lehmann v. Toys 'R' Us*, 626 A.2d 445, 452 (N.J. 1993)).

### C. WHETHER PLAINTIFF ADEQUATELY PLEADS GENDER-IDENTITY HARASSMENT UNDER THE NJLAD

Amazon contends that Plaintiff's gender-identity harassment claim is inadequately pled because the Second Amended Complaint fails to connect the alleged conduct by Amazon employees to Plaintiff's gender identity. (Amazon Moving Br., at 14–15.) Amazon further argues that the isolated incidents of Amazon employees either taking an "innocuous photograph" or engaging in a "single hair pull" does not constitute severe or pervasive discriminatory conduct. (*Id.* at 16–17.) Plaintiff opposes, contending that she states a valid harassment claim under the NJLAD and Amazon's argument disregards much of the factual allegations. (Opp'n Br. at 25–28.) The Court is satisfied that Plaintiff pleads a plausible hostile work environment claim in violation of the NJLAD.

"The [NJ]LAD's goal is 'nothing less than the eradication of the cancer of discrimination.'" *Meade v. Twp. of Livingston*, 265 A.3d 148, 159 (N.J. 2021) (quoting *Raspa v. Off. of Sheriff of Gloucester*, 924 A.3d 435, 442 (N.J. 2007)). The NJLAD makes it unlawful for employers "because of . . . gender identity . . . to refuse to hire or employ or to bar or to discharge or require to retire . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . ." N.J. Stat. Ann. § 10:5-12(a).

To state a claim for harassment under the NJLAD, "a plaintiff must allege that the complained-of conduct: (1) would not have occurred but for the employee's protected status; and it was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment are altered, and the working environment is hostile or abusive." *Karmin v. Amazon, Inc.*, Civ. No. 25-2944, 2025 WL 3089819, at *4 (D.N.J. Nov. 5, 2025) (quoting *Stevenson v. City of Newark*, Civ. No. 20-18722, 2025 WL 1793756, at *14 (D.N.J. June 30,

12

2025)). Courts evaluate the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 891 (N.J. 2003) (quoting *Sheperd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 622 (N.J. 2002)); *accord Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 455 (N.J. 1993) (explaining that "most plaintiffs claiming hostile work environment sexual harassment allege numerous incidents that, if considered individually, would be insufficiently severe to state a claim, but considered together are sufficiently pervasive to make the work environment intimidating or hostile.").

Amazon's attempt to isolate its own conduct is unpersuasive. When considering a hostile work environment claim, it is incumbent upon the Court to "consider the cumulative effect of the various incidents, bearing in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed the sum of the individual episodes." *Lehmann*, 626 A.2d at 455. And based on its review of the entire Second Amended Complaint, the Court concludes Plaintiff adequately alleges a hostile work environment claim for gender-based harassment under the NJLAD.

Here, Plaintiff has tied her alleged mistreatment to her protected status. Plaintiff told a supervisor that she is a transgender woman and that supervisor conveyed this information to Plaintiff's without Plaintiff's permission, causing other employees to demonstrate hostility towards Plaintiff. (SAC ¶¶ 26–28.) Plaintiff was identified as "Ciani *Charles* Freeman" on her work schedule on two separate occasions. (*Id.* ¶ 47.) Additionally, Plaintiff's co-workers called her "Charles," a "little boy," a "man," or other slurs, pulled her hair, and took a photograph of her in the workplace. (*Id.* ¶¶ 50–51, 77–78, 80–81.) These allegations conceivably demonstrate

13

animus towards Plaintiff for "noncompliance with gender stereotypes" because of her gender identity. *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 264 (3d Cir. 2001) (addressing similar conduct in Title VII context). Such behavior is sexist in nature and automatically meets the "but-for" element. *Lehmann*, 626 A.2d at 605.

Viewed objectively, the sum total of Defendants' behavior was severe or pervasive enough to cause a reasonable person to believe the workplace conditions were hostile. *See Lehmann*, 626 A.2d at 453 (noting that "the second, third, and fourth prongs" of a hostile work environment claim, "while separable to some extent, are interdependent."). Despite working for Defendants for less than one year, Plaintiff alleged approximately ten instances of harassment between March and November 2023. (*See generally* SAC.) During that time, Plaintiff's co-workers called her homophobic slurs, pulled her hair, discussed her gender identity with other employees, and referred to her as a man. (*Id.*) And despite Plaintiff's repeated complaints about such treatment, Defendants failed to take remedial actions and instead terminated Plaintiff's employment. (*Id.*) As alleged, these compounding occurrences of harassment surpass "simple teasing, offhand comments, and [non-serious] isolated incidents," and "amount to discriminatory changes in the terms and conditions of employment." *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 280 (3d Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S., 775, 788 (1998)). The Court, accordingly, denies Amazon's Motion to Dismiss Plaintiff's harassment claim under the NJLAD.

### D. WHETHER PLAINTIFF SUFFICIENTLY PLEADS A RETALIATION CLAIM UNDER THE NJLAD

Amazon argues that Plaintiff's retaliation claim fails because her complaints to Amazon did not involve allegations of discrimination and therefore, Plaintiff does not plead that she engaged in a protected activity. (Amazon Moving Br. at 17–18.) Amazon further contends that

even if those complaints constituted a protected activity, Plaintiff does not adequately plead a connection between the adverse action and Plaintiff's complaints. (*Id.*) Plaintiff opposes, contending that she plausibly alleges retaliation under the NJLAD because Amazon disregards the entirety of the pleadings. (Opp'n Br. at 29–30.) The Court agrees with Plaintiff.

The NJLAD prohibits retaliation against an employee who "has opposed any practices or acts forbidden under [the NJLAD]." N.J. Stat. Ann. § 10:5-12(d). To state a prima facie claim of retaliation under the NJLAD, a plaintiff must allege that: "(1) she engaged in a protected activity known to the defendant; (2) she was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)).

With respect to element one, a protected activity "must concern discrimination and moreover, must be more than a general complaint of unfair treatment." *Id.* (quotations omitted). Here, on March 12, 2023, Plaintiff informed Rivera that Carmichael shared her gender identity with others and that disclosing such information could be dangerous for Plaintiff. (SAC ¶ 29–30.) On October 27, 2023, Plaintiff also complained to Rivera regarding a co-worker calling her a homophobic slur, a "little boy," a "man," and "Charles." (*Id.* ¶ 65.) And on November 30, 2023, Plaintiff had a meeting with several Metro One and Amazon managers, informing them of incidents of discrimination and harassment, such as the Amazon employee who took her photograph on November 21, 2023, and the Amazon employee who pulled and tossed her hair on November 23, 2023. (*Id.* ¶¶ 77–84.) Taking Plaintiff's allegations as true, Plaintiff plausibly establishes that she engaged in a protected activity insofar as she informed Metro One and Amazon supervisors and managers of incidents of discrimination and harassment due to her gender identity.

15

As for element two, the test for an adverse employment action under the NJLAD is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Roa v. Roa*, 985 A.2d 1225, 1236 (N.J. 2010). Here, Plaintiff's pleadings indicate three adverse employment actions: the failure to promote, (SAC ¶¶ 29–40), temporary suspension, (*Id.* ¶ 88), and termination. (*Id.* ¶¶ 89–91.) *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (listing, among other examples, firing, and failing to promote as adverse employment actions); *see also Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 423 (D.N.J. 2003) (observing that a five-day suspension qualifies as an adverse employment action). Plaintiff thus plausibly establishes that she endured adverse employment actions by Metro One and Amazon.

Finally, regarding causation, a "[c]ausal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive." *Romano v. Brown & Williamson Tobacco Corp.*, 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div, 1995). At the pleadings stage, the temporal proximity between the protected activity and the adverse employment action serves as circumstantial evidence warranting the inference "that [the plaintiff's] protected activity was the likely reason for the adverse action." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *see also id.* at 178–79 (admonishing district courts for failing to provide plaintiffs with discovery on causation where temporal proximity between the protected action and the adverse action is alleged). Here, Defendants' first adverse employment action—failure to promote—occurred approximately two months after Plaintiff complained to Rivera about Carmichael disclosing her gender identity to other employees without her permission. (SAC ¶ 29–40.) Defendants' second adverse employment action—suspension—occurred on November 30,

16

2023, immediately after Plaintiff met with several supervisors concerning the Amazon employees who took a photograph of her and pulled her hair. (*Id.* ¶¶ 77–88.) Defendants' third adverse employment action—termination—occurred one week after the meeting on November 30, 2023, when a Metro One supervisor informed Plaintiff that Amazon did not want her to return to work. (*Id.* ¶¶ 87–91.) These allegations, viewed in the light most favorable to Plaintiff, are sufficient to demonstrate causation at the pleadings stage. And although temporal proximity alone may not suffice to ultimately prove causation, *Young v. Hobart West Grp.*, 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005), it militates in favor of affording Plaintiff an opportunity to seek discovery as to her employers' motivations with respect to the adverse employment actions she alleged, *Kachmar*, 109 F.3d at 178. The Court therefore concludes Plaintiff states a plausible claim for retaliation under the NJLAD and denies Amazon's Motion to Dismiss this claim.

### V.     CONCLUSION

For the reasons stated above, the Court will **DENY** Amazon and Metro One's Motions to Dismiss. An appropriate Order will follow.

Date: February 23, 2026

                                                     s/ Zahid N. Quraishi
                                                   **ZAHID N. QURAISHI**
                                                   **UNITED STATES DISTRICT JUDGE**